## MARKHAM et al. v. BENNION.

No. 7914.   Decided January 16, 1953.   (252 P. 2d 539.)

See 65 C. J., United States, sec. 30. Selection of presidential electors. 18 Am. Jur., Elections, sec. 8; 153 A. L. R. 1066.

*Herbert F. Smart,* Salt Lake City, for plaintiff.

*Clinton D. Vernon,* Atty. Gen., and *J. Lambert Gibson,* Deputy Atty. Gen., for defendant.

PER CURIAM.

Thomas Markham, William L. Kersher, Harry C. Barnett and Delores Kersher, herein petitioners, filed in this court on October 6, 1952, a petition for what under the old procedure would be known as a writ of mandamus to compel the Secretary of State to place their names on the ballot as candidates for Presidential Electors from Utah of the Socialist Labor Party in the United States.

The asserted right to have the names of these petitioners placed on the ballot rests on the contention that they had been, by a Certificate of Nomination, nominated as independent candidates under Sec. 25-3-50, U. C. A. 1943.[1]

"A certificate of nomination shall be prepared which shall contain the name or names of any candidate or candidates for the office or offices to be filed, their several post-office addresses, if any, their several residences, and, if in a city or town, the street number of residence and place of business, if any; and shall designate in not more than five words, instead of the party, the political or other name which the signers shall select; *provided,* that no name of any political party as defined in this act shall be used, in whole or in part, for this purpose. Said certificate shall be signed by legal voters residing within the district or political division in and for which the officer or officers are to be elected to the number of at least three hundred when the nomination is for an office to be filled by the voters of the entire state, or at least one hundred where the nomination is for an office to be filled by the voters of a district less than a state and greater than a county, or by the voters of a county of at least fifty when the nomination is for an office to be filled by the voters of a county, district, ward or other division less than a county, other than a city. The signatures to said certificate of nomination need not all be appended to one paper, but no certificate shall be legal that does not contain the requisite number of names of voters whose names do

[1] "Candidates for public office who do not wish to affiliate with a political party as defined in this act may be nominated otherwise than by a direct primary election in the manner following:

not appear on any certificate previously filed under the provisions of this section; *provided,* that any such certificate of nomination may be amended in this last respect at any time prior to ten days before the date of primary election. The certificate may designate or appoint upon the face thereof one or more persons as a committee to fill vacancies and, in case of vacancy in any of such nominations, the same may be filled by suh person or committee by a verified certifiate to that effect, duly filed with the officer with whom the original certificate of nomination was filed at least thirty days before the date of election. Each voter signing a certificate shall add to his signature his place of residence and shall, before an officer duly authorized to administer the same, make oath by affidavit thereto attached that he is a voter within and for the political division for which such nomination is made and has truly stated his residence. Said certificate, when executed and acknowledged as before presribed, shall be filed with the secretary of state when for an office or offices to be filled by the voters of the entire state or of any difision or district greater than a county or with the county clerk when for an office or offices to be filled by the voters of an entire county or county district or city or municipality.

"The certificate of nomination to be filed shall be filed with the proper official not more than sixty days or less than thirty days before the date of the November election.

"Within eight days after the filing of any such certificate of nomination with the proper official as aforesaid, each and every candidate named in said certificate of nomination therein tendered in a written statement, duly acknowledged which said statement shall contain the full name and place of residence of such candidate and, if in a city or town, the street number of the same, if any there be, and his place of business, if any, and post-office address.

"When the provisions of this section have been complied with, the candidate or candidates named in such certificate of nomination shall be entitled to all the rights and subject to all the penalties of candidates nominated at direct primary elections. This section shall be liberally construed, so as to give independent candidates for public office every reasonable opportunity to make their candidacy effective."

No question is raised that the so-called Independent Nomination Certificates did not contain the requisite number of signatures of qualified voters of the State of Utah required to make such independent nominations of candidates for public office nor that all the requirements of

such certificate of nomination, such as proper designation of names, residence and place of business were properly not conformed to. It was admitted that a written certification of the nomination of Eric Hass for the Office of President and of Stephen Emery for the Office of Vice President of the United States had been duly filed with Secretary of State Bennion, together with written acceptances of such nominees and written acceptances of the named alleged nominees for presidential electors (and petitioners), all of which papers it was admitted then reposed in the office of said Secretary of State as part of his official records.

It was also admitted for purposes of the petition that all signers of the certificate of nomination were legal voters in the State of Utah and that the certificate contained an attached proper affidavit of oath taken before an officer duly authorized to administer the same that each signer is a voter within the State. The issue was therefore resolved to the single but important one of whether "candidates for public office" as intended by the Legislature of 1937, which enacted Section 45 of Chapter 29, Laws of Utah 1937, carried as Section 25-3-50 in the Utah Code Annotated 1943, included candidates for presidential electors. It should be noted that the question is not whether a presidential elector is a public officer but the narrower one of whether they were public officers as meant by Sec. 25-3-50, U. C. A. 1943. See *Spreckels* v. *Graham*, 194 Cal. 516, 228 P. 1040, 1045, where the Supreme Court of California stated:

"The real question herein, is not whether presidential electors are public officers, but whether the Legislature in using the phrase 'a candidate for any public office' in section 1188 intended thereby to make the provisions of that section applicable to presidential electors. * * * They have no tenure of office other than transient; they have no duties to perform which involve the exercise of judgment or discretion in the slightest degree, and neither are they vested with any portion of the governmental powers of sovereignty, either legislative, executive, or judicial. Their office, if it be an office, has no real existence except for a few hours on the second Monday in January following the presidential election. Their

sole function is to perform a service which has come to be nothing more than clerical—to cast, certify, and transmit a vote already predetermined."

The question was raised by the petitioners—we think not by reason of their lack of diligence—at a very late hour. The printing presses were stopped while we heard arguments on both sides of the question. In spite of the fact that the right of the petitioners to have their names appear on the ballot, if indeed they had that right, was urged so late we believed the question so important that we decided the question on its merits. This we did although the necessity of getting absentee ballots to veterans and others made it imperative that we postpone a written opinion until the brief of the Attorney General was in and we had adequate time fully to state our reasons. Our conclusion was therefore contained in a minute order. This opinion can only be of value if the question is again presented in the next campaign for the President of the United States. We deem it of sufficient importance to record our reasons; hence this belated written opinion.

For a logical presentation of these reasons we revert to the source of the power of the state legislature to provide for the method of choosing Presidential Electors, to wit: Article 2, Section 1 of the Constitution of the United States. It reads as far as here material:

"Each State shall appoint, in such Manner as the Legislature thereof may direct, a Number of Electors, equal to the whole Number of Senators and Representatives to which the State may be entitled in the Congress: * * *."

Pursuant to this constitutional grant of authority, the legislatures of the several states have plenary power to prescribe, in any appropriate manner, for the selection of presidential electors. *McPherson* v. *Blacker*, 146 U. S. 1, 13 S. Ct. 3, 36 L. Ed. 869.

Throughout the history of the State of Utah, presidential electors have before 1937 been selected by conventions held by political parties. In 1937, the Legislature of Utah passed the Direct Primary Law, Chapter 29, Laws of Utah 1937. In that law the Legislature provided for the nomination of presidential electors by a *State platform convention.* Chapter 29, Section 39, Laws of Utah 1937. By Section 46 of the same Act the Legislature provided that presidential electors

"shall be chosen by the *state central committee* [emphasis supplied] of each political party by ballot at a meeting called for that purpose."

It is of course contended by the petitioners that the same Legislature also provided for their selection by "certificate of nomination" (by Chapter 29, Section 45, Laws of Utah 1937, which Chapter 29 pertained to the Direct Primary Law introducing into Utah for the first time the direct primary method of nomination). If the petitioners are correct, and the 1937 Legislature intended to include within the term "public officers" used in Section 45 of the Chapter 29, Laws of 1937, now included in the 1943 Annotated Code as Section 25-3-50, candidates for presidential electors so as to make them electable by the Direct Primary Law, then the Legislature did an odd thing indeed by providing three ways of selecting presidential electors, to wit: (1) by State platform convention of the parties, (2) by State Central Committees of the parties, and (3) by "certificate of nomination" to stand for election by the voters. The first two were consistent in method but inconsistent in mechanism due undoubtedly to confusion in dealing legislatively with the new primary. But it seems unlikely, to put it mildly, that the same Legislature should provide for the selection of presidential electors in case of the well-known parties by some agency of those parties, such as some party committee, and then provide for the rank and file to select all other candidates for public office by direct primary and at the same require and/or permit groups in the state who did not desire to affiliate with a political party to submit their

candidates for presidential electors to the voters in a direct primary. But realizing that incredibility or illogicality are poor grounds upon which to judge the intent of legislature to exclude presidential electors from the term "public offices" used in the statute, we pursue the inquiry further.

The 1939 Session of the Legislature amended Section 46 of the 1937 Act by deleting the provision empowering the state central committees to choose presidential elcetors. See Chapter 37, Section 46, Laws of Utah 1939. The 1939 Session left intact Section 39 of the 1937 Act which provided for presidential electors to be nominated at state platform conventions. Thus one incongruity was eliminated. In 1947 the Utah Legislature repealed Section 39 of the 1937 statute, 25-3-44, Utah Code Annotated 1943, and enacted a new law providing that presidential electors should be selected at the *State organization convention* of each political party, Chapter 35, Section 2, Laws of Utah 1947. Said Section 2 of the 1947 statute provides in part:

"On or before the first Saturday in July of each even-numbered year, the delegates elected to the State Convention of each political party by the several county conventions of such party shall convene at such place in the State as the State Central Committee of such party shall designate and there organize. The Convention shall elect a state central committee for the ensuing term and a chairman and a vice-chairman of opposite sex thereof. *In years of presidential elections they shall also select presidential electors* and the necessary delegates and alternates to the national convention and select the National Committeeman and Committeewoman for the State of Utah." (Emphasis ours.)

This power has remained in the State Organization Conventions until the present time, and no other method has been provided by the Legislature of Utah for the selection of presidential electors.

Thus it will be noted that presidential electors are chosen in a manner different from any other candidates unless, of course, candidates for that office (if it is an office) may

place themselves before the electorate for selection—a privilege not accorded to persons affiliated with political parties. There was a seeming recognition that the selection of presidential electors was really part of the party machinery and those electors were party and not public officers. Their function was single and their existence as officers short. They performed the function of voting for the candidates for President and Vice President which their respective parties, through the citizen voters, chose for those two offices, whereupon their office was completed and, having performed their one and only function as Electors, their official life, if it could be so-called, was ended.

It may be true, as is stated in *Spreckels* v. *Graham*, supra:

"It was originally supposed by the framers of our national Constitution that the electors would exercise an independent choice, based upon their individual judgment."

But by custom that practice no longer exists. Parties may lawfully require electors to pledge to vote for the presidential and vice-presidential candidates of that party. *Ray* v. *Blair*, 343 U. S. 214, 72 S. Ct. 654.

We again find evidence of the legislative intention to withdraw the method of selection of presidential electors from vote by the people by the implications of Sec. 25-6-5, U. C. A. 1943, as amended by Chap. 37, Laws 1947, reading in part as follows:

"All nominations of any political party or group of petitioners shall be placed under the party name or title of such party or group as designated by them in their certificates of nomination or petition, or, if none is designated, then under some suitable title, and the ballots shall contain no other names, except that in case of president and vice-president of the United States the names of the candidates for president and vice-president shall be used on the ballot in lieu of the names of the presidential electors and a vote for president and vice-president of any political party shall be construed as a vote for the *presidential electors selected by such political party at its party convention.*" (Emphasis ours.)

It will be noted that by such Section 25-6-5, U. C. A. 1943, as amended by Chap. 37, Laws of 1947, the names of the national candidates for President and Vice President of the United States should stand on the ballot for the presidential electors so the names of the said electors would not appear thereon, thus making for a shorter and less expensive ballot. This again evidenced the fact that those electors were in practice so unimportant in the whole machinery of the selection of a President and Vice President that the tendency is to eliminate them from the ballot and provide that a vote for the presidential electors be accomplished by a vote for the President and Vice Presidential candidates selected by the national parties. Of course, petitioners must be presumed to contend that if they had succeeded in their action of mandamus instead of printing the names of these petitioners on the ballot it would be equivalent to an order that the names of Eric Hass and Stephen Emery be printed thereon instead and those latter names taken to stand for them as electors. This would have accomplished their purpose which was to cause the ticket of the Socialist Labor Party to be placed on the ballot.

It will be further noted that the section specifies that the presidential electors for which the names of the national candidates for President and Vice President shall stand in lieu of shall be those as are "selected by such political party *at its party convention.*" (Emphasis ours.)

No mention is here made of presidential electors who are selected by the primary vote or any vote of the voters generally, to be placed on the ballot, although at the beginning of the section it is provided that all nominations of any political party or *group of petitioners* shall be placed under the party name or title of such party or *group designated* by them by certificates of nomination or petitions.

The conclusion is irresistible that the Legislature of 1947 recognized that there was a method of nominating all public officers *except presidential electors* by "certificates of nom-

ination" or by petition but that presidential electors must be selected by the party machinery and may *not* be submitted to the voters for selection since they perform only a temporary intermediate function.

And to gain a clearer view of why that is so under a direct primary system, we must go back to the purpose of that system. The purpose was to bring the nomination of "public officers" nearer to the people and not leave it to politicians operating in conventions or in committees.

But as respects presidential electors, no such purpose was contemplated because there was no purpose in having the selection of presidential electors chosen by the people. "Public officers" which the Legislature had in mind were persons to be selected who had fixed and definite tenure, who served for compensation and who had duties to perform for the State or a subdivision fixed usually by statute or under power given by statute and to whom the people of the State or of a local subdivision thereof looked to to perform day in and day out duties largely affecting the life of the people as residents of the State or its subdivision. The Legislature deemed it advisable to have the nomination as well as the election of these officers in the hands of the people; hence the primary for nominating and the general election for electing them. No purpose is served by keeping either the selection or election of presidential electors in the hands of the people. Their tenure is short lived and honorary only. They have today no duties except the perfunctory one of casting a ballot for the national Presidential or Vice Presidential candidates elected by state majorities of citizen voters throughout the country. Their duty today is purely an altruistic duty and may be and is performed almost entirely in their own states and transmitted to the National Capitol. They received no remuneration for their single service. There is no point in their being nominated by the people. The Electorate of a state, except for a very few persons, does not even know their names. Such is the reason why it would be useless to submit candidates for presiden-

tial electors to a vote and therefore no reason to have their names on a ballot. Their selection is almost entirely a matter of form. And that was why the presidential electors were by the Legislature of 1937 and succeeding legislatures eliminated from the primary elections both as respects nomination and election by the simple expedient of excluding them as public officers required to be nominated except through the party machinery—a fact borne out if we take the imperative implications arising from construing paragraphs of statutes dealing with nominations and elections and fitting into the mosaic those paragraphs and sections as we have above done.

We think that the names of the petitioners herein could not be placed upon the general election ballot as independent candidates for the office of presidential elector. The Legislature of Utah, pursuant to federal constitutional authority granted it, has seen fit to vest the power to select or nominate candidates for presidential electors in political party conventions. The petitioners in this case could have been nominated or selected as presidential electors by the signers of the petition had they elected to follow the procedure outlined in Section 25-3-8(g) (2). This section allows any organization of electors to form a political party, hold a convention, select a platform of the party, and have its nominees appear on the November election ballot under the name of the organization of electors which nominated them.

The decision handed down on the 7th day of October, 1952 is therefore confirmed for the reasons herein stated.